DANKER, Respondent, v. GOODWIN MANUFAC-TURING COMPANY, Appellant.

St. Louis Court of Appeals, December 1, 1903.

1. **Instructions:** SUBMITTING ISSUES WITHOUT EVIDENCE. It is improper to give an instruction which submits to the jury issues about which there is no proof, although other instructions restrict the possible award of damages to a finding of facts which there is evidence to support.

2. **Appellate Practice:** NEW TRIAL: EVIDENCE ON ABANDONED ISSUES. The introduction of a mass of evidence upon issues subsequently abandoned, which would tend to distract and confuse the minds of the jury and to raise a prejudice which would tell against the impartial decision of the real issue, is sufficient ground for awarding a new trial.

3. **Nuisance:** MUNICIPAL ORDINANCES. In an action for damages for maintaining a nuisance on a lot near plaintiff's premises, where the only issue to be determined was whether defendants' factory on said lot filled the surrounding air with offensive smells, which were specially injurious to plaintiff, municipal ordinances which prohibited the owners or occupants of property from allowing certain offensive matter to accumulate on the premises, and forbade the conduct of certain kinds of business in an offensive or defective manner within the city limits, were irrelevant to the issue and improperly admitted in evidence.

Appeal from St. Louis City Circuit Court.—*Hon. J. A. McDonald,* Judge.

REVERSED AND REMANDED.

*E. S. Robert* and *Douglas W. Robert* for appellant.

(1) (a) Municipal ordinances, not pleaded, are inadmissible in evidence. Givens v. Van Studdiford, 86 Mo. 159; State ex rel. v. Oddle, 42 Mo. 210; Mooney v.

Kennett, 19 Mo. 551.   (b)   The city of St. Louis could not declare that to be a nuisance, which is not a nuisance *per se*.   The fact of a nuisance is to be determined by the evidence.   St. Louis v. Heitzeberg, 141 Mo. 375; Hisey v. Mexico, 61 Mo. App. 248; Allison v. Richmond, 51 Mo. App. 133; Yates v. Milwaukee, 10 Wall. 497; 2 Wood Nuisance (3 Ed.), pp. 977, 997.   (2)   (a)   Instructions should not be broader than the issues raised by the pleadings and the evidence, nor submit matters not supported by the evidence.   Robertson v. Railroad, 152 Mo. 382; Waddingham v. Hulett, 92 Mo. 528; Price v. Railroad, 77 Mo. 508; Haworth v. Railroad, 94 Mo. App. 215; Marr v. Bunker, 92 Mo. App. 651; Day v. Railroad, 81 Mo. App. 471.   (b)   Instructions should not be inconsistent or contradictory.   Mansur v. Ritchie, 143 Mo. 587; Spillane v. Railroad, 111 Mo. 565; Stone v. Hunt, 94 Mo. 475; White v. Ins. Co., 93 Mo. 282; Price v. Railroad, 77 Mo. 508.   (c)   There was no evidence that gas, steam or smoke was emitted from defendant's factory or caused any discomfort of any kind to plaintiff or his family, hence, it should not have been submitted to the jury.

*Ernest E. Wood* for respondent.

The ordinances were properly introduced as evidence.   Judd v. Railroad, 23 Mo. App. 56; Robertson v. Railroad, 84 Mo. 119; Riley v. Railroad, 18 Mo. 385; Nutter v. Railroad, 22 Mo. App. 328; Fusih v. Railroad, 45 Mo. App. 535; Crocker v. Schureman, 7 Mo. App. 358; Myers v. Kansas City, 108 Mo. 481.

STATEMENT.

The defendant company has a factory on the south side of Chouteau, and between Virginia and Rankin avenues in the city of St. Louis, where it manufactures mining candles and the by-products, red oil and glycer-

ine. The factory embraces all the north half of the block back to an alley, except seventy feet at the east end. The south end of the block abuts on LaSalle street, on the north side of which street is plaintiff's dwelling house. He owns another house on LaSalle street immediately across the alley from defendant's plant and in the same block. The latter property plaintiff purchased in 1902, nine years after defendant's plant was started, and it has been occupied by members of his family for several years. Plaintiff's two properties face south on LaSalle street, the lots extending back toward Chouteau avenue to within fifty feet of defendant's factory.

This action is for damages for the maintenance of an alleged nuisance. As plaintiff's case appears on the face of the petition, the nuisance consists of the following facts incident to the operation of the defendant's factory:

First. The discharge of gas, steam, smoke, noxious vapors which settle down on plaintiff's home and on his other property, affecting the health of his family and tenants, rendering their homes uncomfortable and injuring the shrubbery and trees in the yards.

Second. The dissemination of unwholesome smells which greatly annoy the members of plaintiff's family and make them sick.

Third. Storing large quantities of glycerine, red oil, and other highly explosive and combustible articles in the factory to the constant menace of plaintiff, his property, family and tenants, so that those persons live in fear and dread.

Fourth. The increase of plaintiff's insurance rates by the proximity of said combustible material.

Fifth. The use of old and defective boilers, pipes, digesters and other machinery in the factory; which apparatus on account of its defective condition, is dangerous.

Sixth. Carelessly allowing excessive heat to be used

in connection with the plant, whereby explosions may be caused and by which the lives of persons in the neighborhood, including plaintiff, his family and tenants, are endangered.    As germane to this averment the petition pleads a section of the municipal code of the city of St. Louis, which provides for the inspection of boilers and steam-generating apparatus by a city inspector and forbids the operation of such machinery without a previous inspection, or its operation at a greater pressure than the inspector allows.    Another section is referred to which prohibits the use of such apparatus without the obtention of a certificate of inspection from the inspector of boilers.    The charge is made in the petition that the defendant company failed to obtain a certificate of inspection, but operated its plant without one.    It is also stated that the machinery was inspected by the city boiler inspector (we suppose on that officer's own motion) and the defendant notified that certain portions of the apparatus were not safe and should be repaired before any pressure at all might be used; that the defendant failed to heed that order of the boiler inspector.

Seventh.    It is alleged that within three years before the institution of this action various explosions occurred in the factory by which bricks, pieces of iron, wood, grease and other materials were hurled through the air and about plaintiff's house, causing terror to the inhabitants and shocking the nerves of plaintiff's wife so that her health was badly affected.

The bulk of the evidence introduced by the plaintiff during the trial, went toward proving that the operation of the factory generated noxious gases and vapors, which spread through the neighborhood and were deleterious to the health of the plaintiff's family; in fact, undermined the health of some of the members of his family.    There was much evidence, too, as to the supposed explosions.    No municipal ordinance requiring a certificate from the inspector to legalize the operation of the factory seems to have been introduced; and, in fact,

the allegation about the defective machinery, non-inspection, etc., remained unproven.

But several ordinances of different character, and not referred to in the petition, were introduced over the objection of the defendant. One of these prohibits the owners or occupants of property from allowing unsound meat, pork, fish, hides, decayed vegetables or food, manure, offal, garbage, or filth of any kind, which by decay, might become offensive to human beings or detrimental to health, to accumulate on the premises. Another section prohibits the business of bone-crushing, fat-burning, making of glue, or manufacturing of fertilizing material from dead animals, or any boiling of swill, fat or grease, to be done in an offensive, unclean or defective manner within the city limits. A third prohibits the owners of soap, candle, oil, glue, hemp, varnish or sausage factories, or places where lead is corroded by manure, from permitting the same to remain unclean, or conducting their business to the annoyance of citizens. Several other ordinances of a kindred nature were put in evidence. Defendant objected and excepted to all of them.

Before the case was submitted to the jury, plaintiff's counsel waived his claim to a verdict on the charge that the operation of the factory was injurious to health, and on the alleged explosions; resting his case solely on proof of the emission of bad smells by the factory which permeated the air in the neighborhood to the physical discomfort of the occupants of plaintiff's buildings, including his family, and the depreciation of the value of his property.

An instruction defining the issue which the jury was to determine was given at plaintiff's request. It was as follows:

"The court instructs the jury that if they find from the evidence that plaintiff, on or about the second day of August, 1902, owned and was in possession of the premises on the northwest corner of Virginia avenue

and LaSalle street, in the city of St. Louis, and occupying the same as a dwelling for himself and his family, as charged in the petition, and that defendant was the owner of and engaged in the operation of a tallow plant, oil, candle and glycerine factory on the northwest part of the block bounded on the south by La Salle street, on the north by Chouteau avenue, on the east by Virginia avenue and on the west by Rankin street, and between 3300 and 3400 Chouteau avenue, and about fifty feet from plaintiff's aforesaid property, in which plant and factory it operated a tallow plant, oil, candle and glycerine factory, and that defendant so conducted such plant and factory during the time charged in plaintiff's petition as to cause at various times during the day quantities of gas, steam, smoke and noxious vapors therefrom to permeate the air about the said property of plaintiff in such manner as to produce material physical discomfort to the plaintiff and his family in the occupancy of his said property as a dwelling or to depreciate the value of said property, then the said plant and factory so operated by defendant was a nuisance and you should find in favor of plaintiff, even though said business of defendant was, during all such time, a lawful business.''

At the instance of the defendant the court instructed the jury that damages for a diminution of the value of plaintiff's property depended on a finding that offensive odors emanated from the factory, and further, that plaintiff had withdrawn all claim for damages on the score of injury to the health of his family resulting from bad odors. The further charge was given that there was no evidence to prove the defendant stored combustible and dangerous materials on his premises, no evidence that the boilers and steam-generating apparatus were operated without a license, or that there was danger of their exploding; that, therefore, those averments in the petition must be disregarded.

GOODE, J. (after stating the facts as above).—
The instruction given at the instance of the plaintiff
permitted the jury to return a verdict in plaintiff's fa-
vor if they found the defendant conducted its plant so
as to cause gas, steam, smoke and noxious vapors to
permeate the air about plaintiff's property and to pro-
duce thereby material discomfort to plaintiff and his
family in the occupancy of their dwelling or to depreci-
ate the value of his property. This instruction went
outside the evidence; for there was no testimony that
gas, steam or smoke from the factory caused any dis-
comfort to plaintiff's family or other residents in the
vicinity. While most of the evidence introduced by the
plaintiff was designed to show foul odors emanated
from the factory and were deleterious to the health of
plaintiff's family, this ground of recovery, as stated,
was waived. As to the factory casting out gas, steam
and smoke which spread through the neighborhood,
there was no testimony; not a witness swore to a fact of
that sort. The instructions should have confined the
plaintiff's recovery to a finding by the jury that
stenches emanated from the plant which materially dis-
turbed the comfort of the plaintiff and his family and
diminished the value of his property. The instruction
given in behalf of the plaintiff is inconsistent with the
fifth instruction given for the defendant, which re-
stricted a possible award of damages for depreciation
in the value of plaintiff's property to a finding that of-
fensive odors were emitted from the factory. Plain-
tiff's counsel practically concedes the inconsistency of
the two instructions, but maintains it was harmless. We
are of a different mind. The rule of law that instruc-
tions should not submit issues to a jury about which
there is no proof is wholesome, as tending to prevent un-
founded verdicts. White v. Chaney, 20 Mo. App. 389;
Paddock v. Somes, 102 Mo. 226. Plaintiff's pleading
caused this case to be tried in a way which we disap-
prove. The petition stated various alleged facts which

tended to show the factory was a nuisance to the people near it; a mass of testimony was introduced, ostensibly to prove the different allegations, each of which would be of itself a cause of action; but finally all of them broke down and were abandoned except the one that bad odors proceeded from the factory and were so annoying as to amount to a nuisance. So much testimony on irrelevant issues was apt, not only to distract the jury and confuse their minds concerning the real issue, but to raise a prejudice which told against an impartial decision of the real issue, even if they understood what it was. The instruction requested by the plaintiff and given by the court was as misleading as the abandoned allegations of the petition and the irrelevant evidence those allegations evoked; for it warranted a verdict against the plaintiff on a finding that gas, steam and smoke disturbed him and his family and presupposed a basis for such finding in the testimony; whereas there was no testimony of that sort.

We think the city ordinances referred to in the statement were improperly admitted as evidence and were of prejudicial influence, as a violation of them was not counted on in the petition as a cause of action. After the plaintiff had failed to make good several of the complaints originally preferred against the defendant, there remained, as possible ground of recovery, the question of whether the factory filled the surrounding air with offensive smells, thereby creating a nuisance which specially injured the plaintiff. The presence of such stenches rendered the factory a nuisance, if it was one; not a municipal declaration on the subject, even if there had been an ordinance declaring such factory a nuisance *per se*. But no ordinance introduced by the plaintiff attempts to declare a place which is kept clean and conducted properly, a nuisance. On the other hand, if defendant's plant was kept foul and filthy, it must have constituted a nuisance to plaintiff's family which the law would abate without regard to municipal provis-

ions and regulations. Ordinances may be competent as evidence when they prove some material fact, but not the gravamen of a case, though they are not pleaded. Robertson v. Wabash Ry., 84 Mo. 119. But this rule consists well with the general rule that irrelevant and immaterial evidence should be excluded from a case. The ordinances were improperly received, not because they were not pleaded, but because they had no bearing on the issue to be determined. Frederick v. Allgaier, 88 Mo. 598.

Aside from the possible error in the first instruction, we think the case ought to be retried in the interest of justice on simplified issues, in order that wholly irrelevant testimony may be kept out of it.

Judgment reversed and cause remanded. *Bland, P. J.,* and *Reyburn, J.,* concur.