# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

JOSEPH W. BOOTH & : 
MARGARET A. BOOTH :          S18A-08-001 JJC
: In and for Sussex County
Appellants, :
:
v. :
:
SECRETARY M. SHAWN GARVIN :
& DELAWARE DEPARTMENT OF :
NATURAL RESOURCES & :
ENVIRONMENTAL CONTROL, :
:
Appellees. :

Submitted: December 17, 2018
Decided: February 6, 2019

## MEMORANDUM OPINION AND ORDER
*Appeal from the Decision of the Environmental Appeals Board:  AFFIRMED*

Christopher M. Coggins, Esquire, Coggins Law, LLC, Wilmington, Delaware, *Attorney for the Appellants.*

Robert F. Phillips, Deputy Attorney General, Department of Justice, New Castle, Delaware, *Attorney for the Appellees*.

Clark, J.

Appellant's Joseph W. Booth and Margaret Booth (the "Booths") appeal an Environmental Appeals Board ("EAB") decision. The EAB dismissed the Booths' appeal of (1) an oral statement made by the Secretary of the Department of Natural Resources and Environmental Control ("DNREC"), and (2) a letter written by a separate DNREC official. For the reasons that follow, neither constituted agency action that could be appealed. Furthermore, if the oral statement of the Secretary had constituted agency action, their appeal of that statement would not have been timely. Accordingly, the Booths' appeal in the case was properly dismissed and the EAB's decision must be **AFFIRMED.**

## I. Procedural History

The procedural history in this case is complex and unusual. Namely, the Booths filed two separate EAB appeals regarding the same substantive issues. Both appeals involved DNREC's January 8, 2014, notice of the Booths' alleged liability for environmental contamination at the Thro-Kleen Dry Cleaners Site (hereinafter the "Site") in Georgetown. The Booths purchased the Site and at some point DNREC discovered hazardous substances, terachlorethene ("PCE") and trichloroethened ("TCE"), at the Site. Thereafter, the Booths and DNREC negotiated potential remedial action. The give and take included DNREC urging the Booths to participate in DNREC's Voluntary Cleanup Program, and the Booths' attempt to convince DNREC that they were innocent landowners.

The first alleged agency action that the Booths appealed was an oral statement allegedly made by DNREC Secretary Shawn Garvin (the "Secretary") on May 17, 2017. The only reference in the record regarding the content of that statement was provided in the Booths' letter of appeal to the EAB. There, they alleged that after

discussing their differences at a meeting, the Secretary stated that "he stands by DNREC employees' position and it is his official decision."

The next item the Booths allege was agency action was a May 23, 2017, letter from a DNREC program administrator, Timothy Ratsep ("Mr. Ratsep"). In that letter, Mr. Ratsep wrote in response to a letter from the Booths' former attorney:

> DNREC has a fundamental disagreement . . . Apart from the innocent landowner concern, it seems that there is a misunderstanding of DNREC's position that you, as the owners of the property and the operators of the cleaning business . . . are strictly liable . . . DNREC again urges you to give serious consideration to providing the information necessary to complete an ability to pay determination relating to the potential cleanup costs.

On June 12, 2017, while *pro se*, the Booths filed their first appeal to the EAB. In their letter of appeal, they referenced only the Secretary's May 17, 2017, oral statement. DNREC then moved to dismiss the EAB appeal since it was not filed within twenty days of the alleged agency action as required by statute.[1] The Booths then amended their appeal as follows:

> To date, we have never received an official written position on the Innocent Landowner Defense from Secretary Garvin. He stated verbally in the May 17th meeting [that] "he stands by DNREC employees' position and it is his official decision." We interpret the written position from Mr. Ratsep dated May 23, 2017, as Secretary Garvin's official decision . . . [A]ny person may appeal to the Environmental Appeals Board within 20 days after receipt of the Secretary's decision or publication of the decision.[2]

By agreement of the parties, no EAB hearing followed for some time. In the interim, on October 31, 2017, the Secretary issued a written order finding, *inter alia*,

---

[1] *See* 7 *Del. C.* § 6008(a) (providing that "[a]ny person whose interest is substantially affected by any action of the Secretary may appeal to the Environmental Appeals Board within 20 days after receipt of the Secretary's decision or publication of the decision").

[2] Pl.'s Ex. N, at 2 (emphasis in original removed).

3

that the Booths were not innocent landowners and were liable pursuant to 7 *Del. C.* § 9105(a)(1) for releases of hazardous substances on the Site. The Booths timely appealed that order to the EAB.

Nine months later, on July 2, 2018, the EAB issued its decision regarding the first appeal. In its decision, the EAB granted DNREC's motion to dismiss the Booth's appeal of the Secretary's oral statement and Mr. Ratsep's letter because the appeal was untimely. Nevertheless, the EAB's order recognized that all substantive arguments regarding the Site survived to be later addressed in the remaining appeal of the Secretary's October 2017 written order. The Booths then timely appealed the dismissal of their first EAB appeal to this Court.

With the appeal of the first EAB matter pending in this Court, the EAB scheduled a November 27, 2018, hearing regarding the Secretary's October 2017 written order. The planned scope of that EAB hearing included all substantive issues regarding the Site and any defenses to liability. For reasons that are difficult to understand, the Booths appeared at that hearing but then abruptly withdrew their second appeal. Counsel for the Booths indicated at oral argument in Superior Court that the Booths did not believe they would receive a fair hearing because DNREC and the EAB were structurally intertwined.[3] The Booths did not explain why those assumed circumstances would be any different were the EAB to consider their first appeal.

## II.    Arguments of the Parties

The Booths alternatively argue that the Secretary's oral statement on May 17, 2017, or Mr. Ratsep's letter dated May 23, 2017, constituted agency action by the Secretary that triggered their right to appeal. They argue primarily that Mr. Ratsep's

---

[3] Oral Argument Tr., 2-5, Dec.14, 2018.

letter triggered the accrual of the appeal deadline. They initially argued in their briefing that the Court should reverse the EAB's decision and remand the case for a hearing so they could defend the case on its merits.

At oral argument, the Booths explained that they withdrew their EAB appeal of the Secretary's written order because the EAB and DNREC were inextricably intertwined. This, they allege, makes the EAB an unfair venue to hear the appeal. For that reason, the Booths then sought to argue the substantive merits of their case in this Court.

DNREC counters that the issue before the Court is procedural only. Specifically, it argues that neither the Secretary's oral statement nor Mr. Ratsep's letter constituted agency action that triggered the right (or need) to appeal. Moreover, DREC argues that even if the Secretary's oral statement could have been appealed to the EAB, the issue narrows to one of untimeliness. Finally, DNREC emphasizes that the Booths withdrew the only appeal that could have provided their requested relief.

### III. Standard of Review

The Court's standard of review of an EAB decision is limited to a substantial evidence review and a review for legal error.[4] Since the issues before the Court are (1) the timeliness of an appeal, and (2) whether upon uncontroverted facts the oral statement and Mr. Ratsep's letter constituted agency actions, the Court's standard of review in this case is *de novo*.[5]

---

[4] *Bullock v. K-Mart Corp.,* 1995 WL 339025, at *2 (Del. Super. May 5, 1995) (citing *Motors v. Freemen,* 164 A.2d 686, 688 (Del. 1960)).
[5] *See Hofecker v. Lexus of Wilmington,* 2012 WL 341714, at *1 (Del. Feb. 1, 2012) (explaining that errors of law are reviewed *de novo*).

## IV.    Analysis

One section in the Delaware Code controls the disposition of both aspects of this appeal.  First, it provides in relevant part:

> (a) Any person whose interest is substantially affected by *any action of the Secretary* may appeal to the Environmental Appeals Board *within 20 days after receipt of the Secretary's decision or publication of the decision*.[6]

In the next two subsections of that section, the statute defines two types of DNREC actions that are appealable to the EAB – those from (1) case decisions, and (2) those challenging regulations.  Specifically, those subsections provide:

> (b) Whenever a final decision of the Secretary concerning *any case decision*, including . . . any . . . enforcement action is appealed, the Board shall hold a public hearing . . .
> (c) Appeals of *regulations* shall be on the record before the Secretary . . .  The board my affirm, reverse or remand any appeal of regulations promulgated by the Secretary.[7]

DNREC primarily argues that even if the Secretary's oral statement constituted agency action, the Booths did not file their appeal to the EAB within twenty days of May 17, 2017.  The Booths counter that Mr. Ratsep's May 23, 2017, letter memorialized the Secretary's earlier oral decision and they filed their appeal within twenty days of receiving Mr. Ratsep's letter.

At the outset, if the Secretary's oral statement constituted appealable agency action, DNREC correctly argues that the Booths did not file their appeal within the

---

[6] 7 *Del. C.* § 6008(a) (emphasis added).
[7] 7 *Del. C.* § 6008(b) – (c) (emphasis added).

twenty days required by statute. Appeal periods within agency enabling statutes are jurisdictional.[8] The Court has no discretion to waive such requirements.[9]

Furthermore, there is no reasonable reading of Mr. Ratsep's May 23, 2017, letter that permits it to be considered an action of the Secretary. A common thread in the issues raised in this appeal is a misunderstanding regarding the multi-faceted nature of DNREC's responsibilities. DNREC investigates possible violations, enforces compliance with environmental laws and regulations, and adjudicates environmental violations.[10] It is well settled that legislatures can permissibly charge the same agency with investigating, enforcing, and adjudicating violations.[11] The General Assembly provided for such multi-faceted responsibilities in DNREC's enabling statute. Mr. Ratsep's letter urges the Booths to accept a settlement and explains DNREC's litigation posture. Such correspondence does not fall within the scope of DNREC'S adjudicatory function. Rather, it advances DNREC's compliance related function by urging a pre-hearing resolution. Accordingly, it did not constitute appealable action of the Secretary.

---

[8] *See e.g. Johnson v. Delhaize,* 138 A.3d 1149, 2016 WL 2839857, at *2 (Del. May 5, 2016) (holding that the Superior Court did not have jurisdiction over plaintiff's appeal when plaintiff filed her notice of appeal one year after the IAB order's issuance, because the "timely filing of an appeal is mandatory and jurisdictional"); *and Lively v. Dover Wipes Co*., 2003 WL 21213415, at *1 (Del. Super. May 16, 2003) (explaining that an appeal from the UIAB must be filed within 10 days and that appellant jurisdiction cannot be "invoked or properly exercised unless an appeal is perfected within the time period fixed by law").

[9] *See Draper King v. Malave,* 743 A.2d 672, 673 (Del. 1999) (explaining that "[w]hen a party fails to perfect an appeal within the period mandated by statute, a jurisdictional defect is created that may not be excused in the absence of unusual circumstances that are attributable to court personnel and are not attributable to the appellant or appellant's attorney").

[10] *See Withrow v. Larkin*, 421 U.S. 35, 51-55 (1975) (recognizing the dual nature of an agency's investigative and adjudicative powers).

[11] *Id.* at 57 (explaining at the federal level that the "combination of investigative and adjudicative functions" does not automatically create an unconstitutional risk of bias when agencies perform these functions).

The Booths emphasized in their appeal that the EAB's decision assumed that the Secretary's oral statement constituted agency action.[12]  DNREC challenges this assumption.  The Court reviews EAB decisions *de novo* for legal error.  A reference by the EAB in its decision that assumes an oral statement to be action of the Secretary is not controlling if it was incorrect as a matter of law.

Although, Chapter 60 of Title 7 of the Delaware Code does not expressly define action of the Secretary, Section 6008 of Title 7 can only be reasonably read to provide for appeals of (1) case decisions or (2) regulations.[13]  In order to trigger an appeal right to the EAB, the Secretary must act through written order by deciding a case, or promulgating a final regulation.[14]  With regard to appealing a case decision, only "a final decision of the Secretary" is appealable.[15]  Neither the Secretary's oral statement allegedly stating his future position nor a letter from a senior staff member relaying DNREC's settlement position constituted final decisions of the Secretary.  There was nothing to enforce before the Secretary issued his October 2017 written order.  It follows that there was nothing to appeal before the Secretary issued that written order.

DNREC does not fall within the case decision provisions of Delaware's Administrative Procedures Act ("APA").[16]  Nevertheless, the APA provides a

---

[12] *See* Booth, *EAB Appeal* No. 2017-08 (holding that the Booth's appeal from the verbal statements by Secretary Garvin on May 17, 2017, was untimely, because the board received a notice of appeal 26 days after the Secretary's oral statements).

[13] 7 *Del. C.* § 6008(b) – (c).

[14] *Id.*

[15] 7 *Del. C.* § 6008(b).

[16] *See* 29 Del. C. § 10161 (listing "affected" agencies and providing that all agencies not listed are subject only to subchapters I and II of the APA as well as §§ 10141, 10144 and 10145 of Title 29); *See also* 29 *Del. C.* § 10142 (providing the court's authority to review case decisions of enumerated agencies); *and Fatir v. Phelps*, 2018 WL 3039223, at *1 (Del. Super. Jun. 19, 2018) (recognizing the inclusion of only certain agencies within 29 *Del. C.* § 10142's scope).

8

persuasive definition for what constitutes action of the Secretary in the case decision context. There, it provides:

> "[a]gency action" means either an agency's regulation or case decision, which could be a basis for the imposition of injunctive orders, penal or civil sanctions of any kind or the grant or denial of relief or of a license, right or benefit by any agency or court, or both.[17]

Black's Law Dictionary is likewise helpful. It defines an "action" in the case decision context "to be any judicial proceeding, which, if conducted to a determination, will result in a judgment or decree."[18] Under either definition, neither challenged matter in this case constituted "action by the Secretary" that generated a right to appeal.

Appealable action, and by corollary enforceable action in the case decision context, occurs only through written orders and does not include litigation related correspondence from agents of the Secretary.[19] In the context of alleged hazardous substance releases, DNREC must investigate alleged violations, adjudicate such violations, and enforce remedial measures.[20] In performing some of these functions, the agency must negotiate with alleged violators to reach settlements.[21] In order to negotiate settlements, it must state positions. The Booths incorrectly advocate a

---

[17] 29 *Del. C.* § 10102(2).

[18] Black's Law Dictionary (10th ed. 2014).

[19] *See O'Neil v. Town of Middletown*, 2006 WL 205071, at *9 (Del. Ch. Jan. 18, 2006) (recognizing that "only agency conduct that may be fairly characterized as 'regulations' or 'case decisions'" trigger judicial review).

[20] *See e.g.* 7 *Del. C.* § 6016 (stating that "the Secretary may make or cause to be made any investigation or study which is, in his or her opinion, necessary for the purpose of enforcing this chapter" and the Secretary may designate an investigative officer to "subpoena witnesses and the production of documents and compel their testimony"); 7 *Del. C.* § 6005 (outlining the different civil and administrative penalties that the Secretary may impose pursuant to his or her adjudicatory authority); 7 *Del. C.* 6018 (outlining the Secretary's cease and desist power).

[21] *See* 7 *Del. C.* § 6019 (stating that "[n]othing in this chapter shall prevent the Department from making efforts to obtain voluntary compliance by way of warning, notice or other educational means; this section does not, however, require that such voluntary methods be used before proceeding by way of compulsory enforcement").

holding that would include all litigation related statements made by the Secretary or his or her agents as appealable actions. Such an approach would subject the agency to incalculable interlocutory appeals to the EAB. In the case decision context, respondents can only appeal a final decision that is transmitted in the form of a written order.

At oral argument, the Booths emphasized many substantive issues in support of their appeal. By statute, the Superior Court's review of decisions of the EAB is limited to a review of evidence of record that the parties presented to the EAB.[22] Consistent with statutory limitations, the doctrine of exhaustion of administrative remedies also limits the Court's review.[23] That doctrine "requires that where a remedy before an administrative agency is provided, relief must be sought by exhausting this remedy before the courts will either review any action by the agency or provide an independent remedy."[24] Here, because the issues before the Court are procedural and no evidence was adduced at the hearing regarding substantive issues, the Court may not consider such issues.

In addition to the merits, the Booths argue finally that they could not receive a fair hearing before the EAB. In part, they assert that a conflict of interest between DNREC and the EAB because deputy attorney generals represent both DNREC and the EAB.

The Superior Court correctly analyzed a similar conflict of interest claim in *Kopicko v. Delaware Dept. of Services for Children*.[25] In that decision, later affirmed by the Delaware Supreme Court, the court found no presumption of bias

---

[22] 7 *Del. C.* §6009(b); *See also Bullock*, 1995 WL 339025, at *2 (recognizing that the Court's appellate review of a Board's decision is limited to determining whether the Board's decision was supported by substantial evidence and whether it as an error of law).
[23] *Levinson v. Delaware Compensation Rating Bureau, Inc.,* 616 A.2d 1182, 1187 (Del. 1992).
[24] *Id.*
[25] *Kopicko v. Delaware Dpt. Of Services for Children*, 2003 WL 21976409, at *1 (Del. Super. Aug. 15, 2003), *aff'd,* 846 A.2d 238 (Del. 2004) (TABLE).

10

where an agency exercises both adjudicative and investigative duties.[26] Furthermore, state employed attorneys from the same department that separately represent different agencies do not presumptively generate a conflict of interest.[27] There is a presumption of honesty and integrity that must be overcome by a party asserting such a conflict.[28] When, as here, the General Assembly created a separate appeals body by statute, there is no organic conflict of interest simply because different attorneys from the Department of Justice represent the agency and the board that hears appeals from that agency.

As the United States Supreme Court observed in *Withrow v. Larkin*, "[w]ithout a showing to the contrary, state administrators 'are assumed to be [people] of conscience and intellectual discipline, capable of judging a particular controversy fairly on the basis of its own circumstances.'"[29] Moreover, here, as with any other matter, the Court must confine its decision to the evidence of record below. Since the Booths did not fairly raise this issue below and developed no evidence before the EAB to overcome this presumption, the Court is unable to address it further.

## V.    Conclusion

The Court cannot make a finding regarding the Booth's liability in this matter or regarding the merit of their substantive defenses. While the Court recognizes the strong preference to decide cases on their merits, and recognizes that the Booths withdrew a second appeal that could have fully addressed their issues, the Court must decide only the procedural issues before it. Here, the EAB did not commit

---

[26] *Id.* at *5.
[27] *Id.*
[28] *Id.*
[29] *Withrow*, 421 U.S. at 55 (citation omitted).

legal error when dismissing the Booth's first appeal. Accordingly, the EAB's decision in this matter must be **AFFIRMED.**

**IT IS SO ORDERED.**

<u>/s/Jeffrey J Clark</u>
Judge